James R. Touchstone, Esq. - SBN 184584
Denise L. Rocawich, Esq. - SBN 232792
JONES & MAYER
3777 North Harbor Boulevard
Fullerton, CA 92835
Telephone: (714) 446-1400 / Facsimile: (714) 446-1448
Email: jrt@jones-mayer.com; dlr@jones-mayer.com

Attorneys for Defendant MIGUEL NUNEZ

**MICHAEL N. FEUER,** City Attorney
**SCOTT MARCUS,** Chief, Civil Litigation Branch (SBN 184980)
**CORY M. BRENTE,** Senior Assistant City Attorney (SBN 115453)
**CHRISTIAN R. BOJORQUEZ,** Deputy City Attorney (SBN 192872)
200 N. Main Street, 6th Floor, City Hall East
Los Angeles, California 90012
Tel: (213) 978-7023; Fax: (213) 978-8785
Email: christian.bojorquez@lacity.org

Attorneys for Defendants CITY OF LOS ANGELES, NESTER ESCOBAR, ALEJANDRO PINEDA, XIUHNENTEL LOPEZ, JOSE RIVERA, BRENDA CASTRO, ABEL TORRES, THOMAS ZIZZO, VICTOR GONE, JONATHAN GUNDELL, and LANCE PERKINS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANN JANETTE CORTEZ,<br><br>    Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES, et al.<br><br>    Defendants. | Case No.: 2:18−cv−03248−CAS−JPR<br>*Hon. Judge: Christian A. Snyder; Crtm 8D*<br><br>**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 3 TO EXCLUDE INFORMATION UNKNOWN TO DEFENDANT OFFICERS AT THE TIME OF THE SHOOTING**<br><br>Pre-trial Conference:<br>Date: January 13, 2019<br>Time: 11:00 a.m.<br>Dept.: 8D |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT Defendants, CITY OF LOS ANGELES, NESTER ESCOBAR, ALEJANDRO PINEDA, XIUHNENTEL LOPEZ, JOSE RIVERA, BRENDA CASTRO, ABEL TORRES, THOMAS ZIZZO, VICTOR GONE, JONATHAN GUNDELL, LANCE PERKINS and MIGUEL NUNEZ hereby oppose Plaintiffs' Motion in Limine No. 3 to exclude information unknown to defendants officers at the time of the shooting.

## I. INTRODUCTION

Decedent Santino Trevino was reported to have battered his roommate where 911 was called which necessitated police response to the area. During the course of the investigation, Santino Trevino became increasingly hostile and ultimately armed himself with a loaded handgun and began engaging in threatening actions. During the incident, Santino Trevino was reported to have ingested methamphetamine and was acting in a threatening, irrational and bizarre manner. The Officers had been provided this information prior to making contact with Santino Trevino and once they made contact with Mr. Trevino his actions were consistent with someone under the influence of cocaine and/or methamphetamine. Based upon Santino Trevino's irrational and bizarre behavior, he eventually armed himself with a loaded handgun and created a threat of serious bodily injury and/or death and Officers fired their weapons to stop that threat. Several aspects of the case are disputed by Plaintiff, including (most importantly) whether Santino Trevino ever created a threat of serious bodily injury and/or death, or whether, as Plaintiff argues, Mr. Trevino was attacked by officers and shot for no apparent reason.

All of the Defendant Officers suspected that Santino Trevino was under the influence of a narcotic at the time of the incident. Mr. Trevino's behavior was bizarrely aggressive and uncooperative; Defendant Officers will all testify, based on their training and experience, that Santino Trevino's behavior was consistent

with a person they believed was under the influence of a drug. Moreover, a jury will likely question why an individual would attempt to arm himself and attack fully uniformed and armed officers and Plaintiff claims Mr. Trevino did not pose a threat and that not enough de-escalation took place; that Mr. Trevino had drugs in his system goes to explain his actions and corroborate the officers' statements and perceptions.

Additionally, Plaintiffs allege Santino Trevino had a mental illness and that officers failed to comply with their training on handling a mentally ill individual (despite no officers having actual or constructive knowledge of said mental illness). Defendants must be permitted to testify as to their perceptions of the Mr. Trevino, particularly as to why, despite his erratic behavior, they did not suspect a mental illness (because his actions, to their perception, were more consistent with being under the influence). The results of Santino Trevino's toxicology screening corroborate the officers' perceptions and directly contradict Plaintiff's assertions and accusations that they somehow violated their training in this regard.

Should the court exclude the toxicology results, it would severely and unfairly handicap Defendants' case and their ability to defend themselves against Plaintiff's accusations. Moreover, it would leave a jury to speculate not only regarding whether officers were reasonable in their assessment of Mr. Trevino's mental issues but also as to his actions during the incident with officers. His toxicology screening is clearly relevant and, while damaging to Plaintiff's case (as is all evidence which would be relevant to the defense), not "substantially outweighed" by "unfair prejudice." *See* Fed. R. Evid. 403.

///

///

///

## II. INFORMATION REGARDING SANTINO TREVINO'S INTOXICATION ARE ADMISSIBLE TO CORROBORATE OFFICERS' STATEMENTS

In an excessive force case, the relevant inquiry is whether a particular use of force was reasonable based on what the officer knew at the time force was used. *See generally Graham v. Connor,* 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id* at 396-97.  Extrinsic evidence may still be admissible, however, "in assessing the credibility of an officer's account of the circumstances that prompted the use of force." *Id* at 399 n.12.

In the Ninth Circuit, extrinsic evidence of which officers were not aware is not admissible in evaluating the reasonableness of the officers' actions under a Fourth Amendment "totality of the circumstances" analysis, but it IS admissible to corroborate officers' version of the events if the pre-shooting conduct is disputed. *Boyd v. City & Cnty of San Francisco*, 576 F.3d 938, 948-49 (9th Cir. 2009)("In a case…where what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible."); *see also Castro v. Cnty of L.A.*, 2015 U.S. Dist. LEXIS 103945, *16-17 (C.D.Cal. 2015)("[A] decedent's intoxication is not relevant to the reasonableness inquiry where an officer is unaware of such facts… Notwithstanding the foregoing, evidence of decedent's intoxication may be admissible to corroborate [the officers'] version of events, since decedent's pre-shooting conduct is disputed."). In *Boyd* the Ninth Circuit upheld a district court's ruling permitting extrinsic evidence, including that which showed the decedent was under the influence of drugs at the time of the incident, because it was "highly probative of his conduct, particularly in light of his alleged erratic behavior…" *Id*

-1-

at 949.  The Court found that "police assertions that [decedent] was acting erratically, taunting police and goading them to shoot him instead of following police commands, is made more probable by…evidence that he was on drugs at the time." *Id* at 944. *See also Cotton v. City of Eureka*, 210 U.S. Dist. LEXIS 136270, *19-20 (N.D.Cal 2010)(admitting post-mortem toxicology results indicating decedent had LSD in his system at time of death because it "may be probative of his behavior at the time of the incident."); *Turner v. County of Kern,* 2014 U.S. Dist. LEXIS 18573, *6-8 (E.D.Cal 2014)(collecting cases from various circuits approving of admission of evidence of intoxication and distinguishing *Hayes v. County of San Diego*, 736 F.3d 1223 (9th Cir. 2013) because the pre-shooting conduct in *Hayes* was not in dispute whereas in *Boyd* it was); *T.D.W. v. Riverside County*, 2010 U.S. Dist. LEXIS 35821, *8-11 (C.D.Cal 2010)(approving of admission of evidence of intoxication because it "was probative of decedent's erratic behavior immediately preceding and at the time of the shooting.").

      Plaintiff cites to no cases to support a preclusion of such evidence in the moving papers as any cases cited are distinguishable or otherwise not persuasive. The Ninth Circuit in *Glenn v. Wash.* Cnty, 673 F.3d 864 (9th Cir. 2011), a case usually relied upon by Plaintiffs, approved of the district court's consideration that officers were aware decedent was intoxicated, but refused to consider threats made prior to officers' arrival of which the officers were not aware. More importantly, however, *Glenn* simply held that summary judgment was not appropriate given the fact-intensive nature of the case and was critical of the court for various factual analyses made therein; the appellate court determined that with such a fact-intensive analysis the case should have gone to the jury. *Glenn* made no mention of *Boyd* and gave no instructions to the court about evidence that should or should not be presented to a jury. Another case cited to by Plaintiffs, *Ruvalcaba v. City of L.A.*, 2014 U.S. Dist. LEXIS 126162 (C.D.Cal 2014), has been criticized for improperly inferring that *Boyd* was no longer controlling law. *See Korff v. City of*

*Phoenix,* 2014 U.S. Dist. LEXIS 37679 at *5 (D.Az. 2015)(finding *Ruvalcaba* unpersuasive and citing the reasoning of *Turner*, *supra).* Indeed in *Ruvalcaba,* instead of attempting to rectify the conflict in the apparent the differences of opinions in *Glenn, Hayes,* and *Boyd,* the Court simply jumped to the conclusion that *Boyd* was no longer good law. *Ruvalcaba*, 2014 U.S. Dist. LEXIS at *4-5. Neither *Glenn* nor *Hayes* mentioned *Boyd* and no other court has ever come to this conclusion. Instead, other courts that have analyzed this issue have concluded as discussed in *Castro* and *Turner*, *supra*, that in cases where the decedent or plaintiff's pre-force conduct is in dispute, evidence of intoxication is relevant for purposes of corroborating the officers' statements. *See also Willis v. City of Fresno,* 2014 U.S. Dist. LEXIS 52565 (E.D. Cal 2014)(Acknowledging the difference in cases and finding ultimately that "[e]vidence of intoxication and drug use is relevant to explain [decedent's] conduct and may tend to corroborate the officers' version of events, even if this same evidence is not admissible towards the objective reasonableness of the officers' conduct."); *Pickard v. Holton*, 2015 U.S. Dist. LEXIS 49, *3-4 (N.D.Cal 2015)(acknowledging that information not known to an officer at the time of the alleged excessive force is "not relevant to an evaluation of the objective reasonableness of the officer's actions" but noting that "courts do permit the admission of certain evidence not known to a defendant law enforcement officer, if that evidence is relevant for some other purpose.")

Plaintiff's argument that defendant officers who perceived that Mr. Trevino may have been under the influence of narcotics, namely officers on the street as opposed to on the 4th Floor, should be precluded from testifying to their perception is similarly unpersuasive. It is irrelevant that some officers perceived he was under the influence of narcotics because they were told and made personal observations versus others down on the street due to their location could not have come to such a belief. Each defendant is evaluated as to his or her own conduct, and the jury is required to answer questions on a verdict form as to whether each individual

officer's conduct was reasonable; the fact that some officers were on the street, had not been in close proximity to Mr. Trevino, nor had they been informed that Mr. Trevino had consumed drugs does not negate or invalidate the perceptions of officers on the street that they believed Mr. Trevino to be under the influence based upon their own observations.  Moreover, several courts have held that evidence of intoxication is admissible <u>regardless</u> of whether the officers believed the subject was intoxicated at the time because it still tends to corroborate the officers' version of the events. *See Willis*, *supra,* 2014 U.S. Dist. LEXIS at *67-68 (evidence admitted even though officers were unaware of intoxication because it was relevant and probative of decedent's conduct); *T.D.W.*, *supra,* 2010 U.S. Dist. LEXIS at *8-11 (admitting intoxication evidence despite no deputies suspecting intoxication). The point of admitting the toxicology results would be to corroborate the officers' statements, not as an independent analysis of the level of intoxication of the decedent at the time of the incident and what that could mean for his behavior. *See, e.g. Lopez v. Banuelos*, 2014 U.S. Dist. LEXIS 46420 at *8-10 (in ruling toxicology results admissible as corroborative of officers statements and rejecting the argument that a toxicologist is necessary to opine on the results, the Court found "Neither *Boyd* nor the above District Court cases held that there is a requirement that an expert witness be designated in order for evidence of drug or alcohol consumption or intoxication to be admitted.  This is likely due to a recognition that ingestion of intoxicating substances is generally known to alter a persons' perception and behavior to some degree."). Plaintiff's arguments that such evidence is "hearsay" and lacks "foundation" are similarly meritless: the toxicology results are considered a business record under Fed. R. Evid. 803(6) and public record under Fed. R. Evid. 803(8) and the document is self-authenticating under Fed. R. 902(4).

///

Plaintiff's argument, that officers perceptions and the corroborating evidence thereof is irrelevant, simply fails. The significant majority of district courts who have evaluated this issue have held that, while a decedent or plaintiff's state of intoxication may be irrelevant when evaluating the "reasonableness" of an officers' actions, it is HIGHLY relevant for the purpose of corroborating the officers' version of the incident when there is a dispute about what occurred immediately prior to the use of force. Here, Plaintiff disputes that Santino Trevino was a threat or that he was under the influence; as such, evidence that would tend to support such a statement is admissible to corroborate their statements. Evidence that Mr. Trevino was suspected to be under the influence of drugs, and in fact methamphetamine was positively found in his system, is relevant to the extent is explains his bizarre actions which ultimately caused his own death.

## III. DECEDENTS' PERCEIVED INTOXICATION AND TOXICOLOGY RESULTS ARE ADMISSIBLE UNDER FED. R. EVID 403

Plaintiff may argue that even if the toxicology results are relevant, they should be excluded under Fed. R. Evid. 403 as unduly prejudicial, cumulative and a waste of time. Defendants disagree. Under Fed. R. Evid 403 relevant evidence may be excluded ONLY if it is "substantially outweighed" by the risk of "unfair prejudice" which is defined as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 Adv. Comm. Notes. Anything relevant is inherently prejudicial to one side or the other; evidence may only be excluded if the prejudice is so extreme that jurors would make a decision on an entirely improper basis. Here, the evidence is clearly relevant, as it was a factor officers considered at the time of the incident and the toxicology results corroborate the officers' observations. Plaintiff does not identify any actual prejudicial effect at all in their moving papers (though likely they will come up with one or two in their reply). Instead many Plaintiffs cite

irrelevant criminal cases generally declaring drug use to be prejudicial, and a civil case wherein the toxicology results were admitted <u>only</u> for the purpose of damages. *See Estate of Diaz v. City of Anaheim*, 840 F.3d 592 (9th Cir. 2016). In *Estate of Diaz* the Court found that damages should have been bifurcated from liability because toxicology evidence had no relevance to the liability phase; the Court did NOT opine that the evidence should have been excluded altogether. This is clearly distinguishable from the case at bar wherein the evidence of decedent's intoxication is highly relevant to both liability and damages. This evidence of "prejudice" is insufficient. The fact that Plaintiff may simply do not like the evidence is not a good enough reason to exclude it under Rule 403.

      Many Plaintiffs also cite to *Contreras v. City of Los Angeles*, 2:11-CV-01480 Dkt. 177 and *Garrett v. City of Los Angeles*, 12-CV-01670 Dkt. 104 to support their contention that admission of toxicology evidence is cumulative and a waste of time. Neither opinion deals with a similar situation as the case at bar: In *Contreras* defendants contended drug use was relevant to damages as to possible life expectancy (but failed to explain how) and in *Garrett* the medical examiner opined the "very small" and "trace" amounts of cocaine would have no physiological effect on decedent. In neither case were the defendant officers aware or even suspected that the subject in question was under the influence of narcotics. *Id*. In this case, the amounts of narcotics were significantly more than "trace amounts", the officers suspected Plaintiff was under the influence of narcotics at the time, and defendants seek to use the evidence as corroborative of officers' statements. Here there are not 19 eyewitnesses, as in *Garrett*; the only witnesses who observed decedent arm himself and create a threat of death or serious bodily injury are defendant officers. There is of course other evidence available (including auido and eyewitness testimony) regarding his <u>general behavior and demeanor</u> prior to the incident. However, only the officers' statements exist regarding the altercation and what occurred therein. As such the testimony of the defendant

officers as to Mr. Trevino's actions is absolutely crucial, and any evidence that reflects on the credibility of that testimony is highly relevant and not at all cumulative. Moreover, this evidence would take very little actual testimony time; the toxicology report would come into evidence without much fanfare and the officers would simply testify to their perceptions and beliefs during the incident. It could hardly be called a "waste of time" to spend a few minutes on such highly relevant evidence.

Plaintiffs also allege that decedent was suffering from a mental illness and claim that officers failed to comply with their training on how to handle a person suffering from such a mental illness. Defendants argument is that none of the defendant officers suspected, nor had any reason to know about his apparent mental illness and therefore it is irrelevant for the purpose of a reasonableness analysis under *Graham v. Connor* 490 U.S. 386 (1989).. However, should Plaintiff be permitted to introduce evidence of decedent's mental health, it is imperative that Defendants also be permitted to testify as to their perceptions of the man, particularly as to why, despite his aggressive behavior, they did not suspect a mental illness. The officers are expected to testify decedent's actions, to their perception, were more consistent with him being under the influence than having some mental illness. The results of Mr. Trevino's toxicology screening corroborate the officers' perceptions and directly contradict Plaintiff's assertions and accusations that they somehow violated their training in this regard.

It is without dispute that officers' observations and thoughts at the time of the incident are admissible in every fourth amendment excessive force analysis. *See Graham v. Connor*, 490 U.S. at 397 ("[T]he question (in an excessive force case) is whether the officers' actions are 'objectively reasonable' <u>in light of the facts and circumstances confront them</u>." (emphasis added). Jurors will be instructed to evaluate the "totality of the circumstances" confronting Defendants at that time of the incident in determining whether their actions were reasonable. This

-7-

includes Defendants' individual perceptions and bases for their actions; if the Court prevents them from doing so, it will be removing a crucial aspect of this defense. It is important to note that Plaintiff does not believe officers could have formed such opinions and that Defendant Officers' perceptions are unsubstantiated and unsupported, yet at the same time Plaintiff seeks to exclude the toxicology results that <u>actually substantiated</u> the officers' beliefs. This argument is directly illustrative of why the toxicology report must come in, because otherwise Plaintiff would be allowed to (falsely) argue and the jury will have the (false) perception that in fact the officers' perceptions were unsubstantiated. In truth, they are the opposite. The toxicology results directly corroborate and substantiate the officers' perceptions and beliefs about the decedent's behavior, and corroborates their statements that Mr. Trevino armed himself and created a threat of serious bodily injury and/or death. Without this information, jurors are left to question *why* a person would ever act in such an erratic matter and why a person would ever challenge armed and fully uniformed police officers which would tend to shed doubt on the officers' statements about this very fact. To prevent the jury from knowing this information is to prevent the jury from knowing the truth.

## IV. CONCLUSION

Defendants must be permitted to testify regarding their observations and perceptions at the time of the incident; in this case that includes the observation and suspicion of the defendant officers that Santino Trevino was under the influence of narcotics during the incident. The result of the toxicology analysis is admissible as corroborative of officers' observations and their statement as to his actions which precipitated the shooting. To exclude this evidence would

///
///
///

significantly impair the ability for these officers to put on a defense to which they are entitled. For these reasons, Plaintiff's Motion in Limine No. 3 should be denied in its entirety.

DATED: December 23, 2019      JONES & MAYER

By: /S/ *James R. Touchstone*
JAMES R. TOUCHSTONE
DENISE L. ROCAWICH
Attorneys for Defendant Officer NUNEZ

DATED: December 23, 2019      MICHAEL N. FEUER, City Attorney
SCOTT MARCUS, Chief, Civil Litigation Branch
CORY M. BRENTE, Senior City Attorney

By: /S/ *Christian R. Bojorquez*
CHRISTIAN R. BOJORQUEZ, DCA
Attorneys for Defendants CITY OF LOS ANGELES, NESTER ESCOBAR, ALEJANDRO PINEDA, XIUHNENTEL LOPEZ, JOSE RIVERA, BRENDA CASTRO, ABEL TORRES, THOMAS ZIZZO, VICTOR GONE, JONATHAN GUNDELL, and LANCE PERKINS